FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

NOV 1 5 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

DAMIEN DENNIS,  )  3:10-cv-00591-ECR (WGC)
  )
    Plaintiff,  )  **REPORT AND RECOMMENDATION**
  )  **OF U.S. MAGISTRATE JUDGE**
vs.  )
  )
TOM STUBBS, et. al.  )
  )
  )
    Defendants.  )

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion to Dismiss. (Doc. #24.)[1] Plaintiff has opposed (Doc. #26), and Defendants have replied (Doc. # 27). In addition, Plaintiff filed a response to Defendants' reply (Doc. # 28), which Defendants move to strike (Doc. # 29). Plaintiff opposed the motion to strike (Doc. # 32) and Defendants replied (Doc. # 33). After a thorough review, the court recommends that Defendants' Motion to Dismiss (Doc. # 24) be denied. The court also recommends that Defendants' Motion to Strike (Doc. # 29) be denied.

## I. BACKGROUND

Plaintiff Damien Dennis (Plaintiff), a *pro se* litigant in custody of the Nevada Department of Corrections (NDOC), brings this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl. (Doc. #1-2) at 1.) At all relevant times, Plaintiff was housed at Ely State Prison (ESP). (Doc. # 1-2 at 1.) Plaintiff names Defendants Correctional Officer Tom Stubbs, Correctional

---

[1] Refers to court's docket number. Defendants also filed an errata to their motion. (Doc. # 38.)

Officer Terrance Deeds, and Correctional Lieutenant James Minnix. (Doc. # 1-2 at 3-4.)[2] Plaintiff originally filed this action in the Seventh Judicial District Court of the State of Nevada in the County of White Pine, and it was subsequently removed by Defendants Stubbs and Deeds. (*See* Doc. # 1.) On screening, it was determined Plaintiff sets forth colorable claims for excessive force and deliberate indifference to serious medical needs in violation of the Eighth Amendment. (*See* Doc. # 12.) Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages. (Doc. # 1-2 at 18.)

In Count I, Plaintiff asserts a claim for excessive force against Defendants Stubbs, Deeds, and Minnix. (Doc. # 1-2 at 5-12.) Specifically, Plaintiff claims that on January 15, 2010, he was slammed face-first into the wall by Defendants Stubbs and Deeds, and subsequently slammed into the floor and held down by Defendant Deeds while Defendant Stubbs repeatedly hit Plaintiff in the face. (*Id.* at 6-9.) He alleges that Defendant Minnix had a clear view of this conduct, but did nothing. (*Id.* at 9.)

In Count II, Plaintiff asserts a claim for deliberate indifference to his serious medical needs against Defendant Minnix. (Doc. # 1-2 at 13-15.) He alleges that after the altercation described above, a nurse told Defendant Minnix that Plaintiff needed stitches and should see a doctor. (*Id.* at 13.) Plaintiff asserts that Defendant Minnix disregarded the nurse and instructed officers to take Plaintiff back to his cell. (*Id.*) After returning to his cell, Plaintiff passed out and lost consciousness. (*Id.* at 14.) Plaintiff's cell mate pushed the intercom button for help, which was not answered until two or three minutes after he regained consciousness. (*Id.*) Plaintiff asserts that Defendant Minnix knew of his serious injuries and need to see a doctor for stitches, yet disregarded the risk to Plaintiff's health by purposely delaying, denying, and interfering with Plaintiff's receipt of medical treatment. (*Id.* at 14-15.)

Defendants Stubbs and Deeds filed their motion to dismiss for failure to exhaust

---

[2] The State of Nevada and NDOC were dismissed on screening. (Doc. # 12 at 3-4.) Pending before the district court are Plaintiff's Motion for Default Judgment (Doc. # 34) and Motion for Summary Judgment for Default (Doc. # 39) against Defendant Minnix. These two motions are the subject of a separate Report and Recommendation.

administrative remedies on May 17, 2011. (Doc. # 24.)

## II. LEGAL STANDARD

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one

for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 24, Ex. B.) Under the version of AR 740 effective February 12, 2010, inmates use the grievance procedure "to resolve addressable inmate claims including, but not limited to, personal property, property damage, disciplinary appeals, personal injuries, and any other tort claim or civil rights claim relating to conditions of institutional life." (Doc. # 24 Ex. B at 3.) The procedure consists of: (1) an informal level grievance; (2) a first level grievance; and (3) a second level grievance. (Doc. # 24 Ex. B at 5-8.)

The informal level grievance must be filed within (6) months for an issue involving personal property damage or loss, personal injury, medical claims or any other tort claims, including civil rights claims, and within ten (10) days for any other issue, including classification, disciplinary, mail, correspondence, religious items, and food. (Doc. # 24 Ex. B at 6.) The time limit for response to an informal and first level grievance is forty-five (45) days, and sixty (60) days for a second level grievance. (*Id.* at 7, 8.) The inmate has five (5) days from receipt of the response to proceed to the next grievance level. (*Id.* at 7, 8.) An overdue response from NDOC does not count against the inmate's time frame for an appeal if he awaits the response before initiating the appeal. (*Id.* at 4.)

Finally, grievances that allege staff misconduct are reviewed by the warden, and if appropriate, the Office of the Inspector General. (Doc. # 24 Ex. B at 7.) If this occurs, it will be reflected in the response to the informal level grievance; however, the inmate must still complete all three steps of the grievance process. (*Id.*)

///
///

4

## III. DISCUSSION

### A. SUMMARY OF ARGUMENT AND EVIDENCE

#### 1. Defendants' Motion (Doc. # 24)

Defendants Stubbs and Deeds argue that Plaintiff failed to exhaust his administrative remedies because he failed to attach the informal grievance to the first level grievance, which they contend is required by AR 740.06, and he abandoned his grievance by failing to correct this deficiency. (Doc. # 24 at 5-6.)

Defendants provide the court with a complete list of the grievances filed by Plaintiff during his tenure at NDOC, in the form of the Nevada Offender Tracking Information System (NOTIS) report. (Doc. # 24, Ex. A.) Defendants also filed a copy of NDOC AR 740, effective February 12, 2010. (Doc. # 24, Ex. B, Doc. # 38.)[3] While Defendants did not file the actual grievance forms submitted by Plaintiff or the prisons responses in connection with their motion, they did provide these documents in connection with their reply. (Doc. # 27, Ex. C.)[4]

#### 2. Plaintiff's Opposition (Doc. # 26)

In his opposition, Plaintiff argues that he did resubmit his first level grievance and contends that he would not have been permitted to proceed to the second level of the grievance

---

[3] Defendants Stubbs and Deeds filed an errata, including a declaration authenticating the documents attached as Exhibit "B" to their Motion to Dismiss, which contains AR 740, effective February 12, 2010. (Doc. # 38.) The court assumes this version of AR 740, effective February 12, 2010, applies, even though Plaintiff filed his informal level grievance on January 18, 2010, because Defendants' argument centers around the deficiency with respect to Plaintiff's first level grievance, which was submitted by Plaintiff on April 24, 2010.

[4] Defendants are reminded that it is critical to provide the court with all grievance documentation which supports their unenumerated 12(b) motion, and to provide those documents with the moving papers. *See e.g.*, Fed. R. Civ. P. 56(c)(4), (e); Fed. R. Evid. 901, *et. seq.; see also Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007) (proper foundation must be laid for evidence supporting motion for summary judgment, and documents must be authenticated and attached to a declaration of someone who has personal knowledge); *Citizens for Better Forestry v. U.S. Dept. of Agriculture*, 341 F.3d 961, 972 n. 7 (9th Cir. 2003) (failure to satisfy authentication requirements justifies disregard of documents by court when reviewing the motion). While a motion to dismiss for failure to exhaust administrative remedies is properly raised in an unenumerated 12(b)(6) motion and not a motion for summary judgment, *Wyatt*, 315 F.3d at 1119 (citations omitted), the court may still look beyond the pleadings and the evidentiary requirements should still apply. *See Wyatt*, 315 F.3d at 1120, n. 15 (finding defendants did not meet their burden to establish failure to exhaust because documents submitted did not permit appellate court to determine whether it was a complete record of the plaintiff's grievance history).

process if he had failed to properly file his first level grievance. (Doc. # 26 at 3.) He asserts that he received the first level grievance back from caseworker Chad Smith on May 18, 2010, with the informal level grievance attached, and the response was a printout stating that investigations conducted by or on behalf of the Inspector General's Office are confidential, and indicating that the matter was under review. (*Id.*) He then took the informal and first level grievances, and attached them to his second level grievance. (*Id.* at 4.) He claims that he forgot to include the computer printout he received as a first level response, so he wrote a letter to Greg Cox explaining this, and asked that Mr. Cox include a copy of the printout he enclosed with the letter with the rest of his grievance. (*Id.*) He never received a response from Mr. Cox, nor did he receive the printout back when he received the response to his second level grievance. (*Id.*)

### 3. Defendants' Reply (Doc. # 27)

Defendants filed a reply which includes the declaration of Associate Warden Baker and true and correct copies of the documents contained within Plaintiff's grievance file related to grievance 2006-28-90876. (Doc. # 27 at 2, Ex. C and Ex. 1.) Contrary to Plaintiff's assertion, Associate Warden Baker states that based on her review of these documents, as well as the NOTIS report, there is no evidence that Plaintiff re-submitted his first level grievance after it was returned as improper. (*Id.* at 4, Ex. C at ¶ 4.) In addition, Defendants respond to Plaintiff's claim that he would not have been permitted to proceed to the second level if his first level grievance had been improper by stating that the grievance was denied at the second level with the following response: "Your grievance has been forwarded to the Office of the Inspector General through the NOTIS system and 'An inmate must complete all three steps of the grievance process, even if his claim is being investigated' per AR 740.05.11." (*Id.* at 4, Ex. C and Ex. 1 thereto.) Accordingly, Defendants conclude that Plaintiff's second level grievance was not decided on the merits, and Plaintiff failed to exhaust his administrative remedies. (*Id.* at 4.)

///

#### 4. Plaintiff's Response to Defendants' Reply (Doc. # 28)

Plaintiff filed a response to Defendants' reply. (Doc. # 28.) Plaintiff argues that Associate Warden Baker could not have accessed all documents relating to grievance 2006-28-90876 because the printout that he contends was given to him as a first level grievance response is not contained within those documents, as he sent it to Greg Cox and it was never returned to him. (*Id.* at 2.) He also contends that the day before Defendants' filed their Motion to Dismiss, caseworker Chad Smith asked Plaintiff to copy his grievances at the request of Mrs. Baker, because NDOC had lost their copies. (*Id.*)

#### 5. Defendants' Motion to Strike (Doc. # 29)

Defendants filed a Motion to Strike Plaintiff's response to their reply. (Doc. # 29.) In his opposition, Plaintiff acknowledges that LR 7-2 does not permit the filing of a response to a reply brief, but argues that he should be entitled to respond to Defendants' reply because they are trying to dismiss his case. (*Id.* at 1.)

### B. Analysis

#### 1. Motion to Strike (Doc. # 29)

Defendants are correct that LR 7-2 only permits the filing of a motion as well as opposition and reply briefs. LR 7-2. Any other briefing requires further order of the court. *Id.* Plaintiff did not request leave of court to file his response to Defendants' reply. However, the court finds the Motion to Strike (Doc. # 29) should be denied because Plaintiff's response focuses on the declaration of Associate Warden Baker and the documents she authenticates related to Plaintiff's grievance, which were not filed with Defendants' moving papers. Plaintiff is cautioned that if he seeks to file supplemental briefing in the future, he is required to obtain leave of court.

#### 2. Motion to Dismiss (Doc. # 24)

##### i. Summary of grievance process - grievance 2006-28-90876

A review of the grievance documentation provided to the court reveals the following: Plaintiff submitted his informal level grievance on January 18, 2010. (Doc. # 27 at 10-

7

15, Doc. # 26 at 6-11.) The informal level grievance contains a response that is crossed out, signed by a caseworker on February 12, 2010. (*Id.*) The informal level grievance provided to the court by Plaintiff also contains a note stating that investigations conducted by the Inspector General's Office are confidential, and that the matter is under review. (Doc. # 26 at 6.)

Plaintiff submitted his first level grievance on April 24, 2010. (Doc. # 27 at 17-19, Doc. # 26 at 13-15.) On April 30, 2010, Warden McDaniel responded with an improper grievance memorandum indicating that Plaintiff failed to attach the informal level grievance to the first level grievance. (Doc. # 27 at 16, Doc. # 26 at 12.) The memorandum also notifies Plaintiff that he could resubmit the grievance after correcting this deficiency; however, failure to resubmit constitutes abandonment. (*Id.*)

On May 18, 2010, Plaintiff submitted his second level grievance, wherein he asks, "[w]hy are my grievances continuously being sent back to me regarding this matter? If this grievance was referred to the I.G.'s office, then why aren't these original grievances w/ the I.G. so that a response can be given once the I.G. has talked to me like their [sic] suppose to?" (Doc. # 27 at 20-22, Doc. # 26 at 16-17.) He also addresses other perceived irregularities in the response to his situation. (*Id.*) The second level response, dated June 22, 2010, states: "Your grievance has been forwarded to the Office of the Inspector General through the NOTIS System and 'An inmate must complete all three steps of the grievance process, even if his claim is being investigated' per AR 740.05.11." (Doc. # 27 at 22, Doc. # 26 at 19.)

### ii. Proper exhaustion

Under *Woodford*, Plaintiff was required to properly exhaust his available administrative remedies. *Woodford*, 548 U.S. at 89. As stated above, "proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

Defendants claim that Plaintiff's pitfall was in failing to attach his informal level grievance when he was submitting his first level grievance for review, and conclude that his

8

failure to correct this deficiency constitutes an abandonment of his grievance. (Doc. # 24 at 5-6.) While Defendants are correct that AR 740.06 states that a first level grievance that does not comply with procedural guidelines shall be returned to the inmate unprocessed with instructions for proper filing (Doc. # 24 Ex. B at 7), they do not identify where in AR 740 it is specified that an inmate must attach his informal level grievance to the first level grievance. A review Defendants' Exhibit B indicates this requirement is not set forth anywhere in AR 740. If this requirement is set forth somewhere other than AR 740, Defendants fail to point it out.

AR 740 requires that a first level grievance be reviewed, investigated, and responded to by the warden at the institution where the incident being grieved occurred. (Doc. # 24 Ex. B at 7.) The inmate is required to provide a signed, sworn declaration of facts that form the basis for the claim that the informal response is incorrect, including a list of persons with relevant knowledge or information supporting the claim. (*Id.*) While AR 740 states that "additional relevant documentation should be attached at this level," it does not specifically require inclusion of the informal level grievance. (*Id.*) It makes sense that an inmate would not be required to re-submit the lower level grievance given that AR 740 also provides that grievance documents are to be stored at the institution where the grievance issue occurred, and employees participating in the disposition of a grievance shall have access to records essential to disposition of the grievance. (*Id.* at 3.)

The evidence demonstrates that Plaintiff complied with all procedural hurdles NDOC held out to him in AR 740, and he appealed through all levels of the grievance process. Defendants, therefore, have not met their burden of showing Plaintiff failed to properly exhaust his administrative remedies. Accordingly, the Motion to Dismiss (Doc. # 24) should be denied.

9

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order that Defendants' Motion to Strike (Doc. # 29) be **DENIED**.

**IT IS HEREBY FURTHER RECOMMENDED** that the District Judge enter an Order that Defendants' Motion to Dismiss (Doc. # 24) be **DENIED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: November 15, 2011.

_William M. Cobb_
UNITED STATES MAGISTRATE JUDGE