**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| DAMIEN DENNIS,           Plaintiff, <br><br> vs. <br><br> THE STATE OF NEVADA, *et al.*, <br><br>           Defendants. | 3:10-cv-00591-RCJ (WGC) <br><br> **REPORT & RECOMMENDATION** <br> **OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. section 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' (specified below) Motion for Summary Judgment (Doc. # 69). Plaintiff Damien Dennis opposed (Doc. # 80) and Defendants replied (Doc. # 85). After a thorough review, the court recommends Defendants motion should be granted in part and denied in part.

## I. BACKGROUND

Plaintiff Damien Dennis, a *pro se* litigant in the custody of the Nevada Department of Corrections ("NDOC"), brings this action pursuant to 42 U.S.C. section 1983. (Pl.'s Compl. (Doc. # 1-3, Ex. A) at 2.) The events giving rise to this litigation occurred while Dennis was housed at Ely State Prison ("ESP") in Ely, Nevada, where he presently resides. (*Id*.) Defendants are Tom Stubbs, a correctional officer at ESP; Terrance Deeds, a correctional officer at ESP; and James Minnix, a correctional lieutenant at ESP (collectively "Defendants," unless referred to individually or otherwise noted). (*Id*. at 3.)

On screening, the court determined Dennis stated a colorable Eighth Amendment claim against Stubbs and Deeds for excessive force, and a colorable Eighth Amendment claim against Minnix for deliberate indifference to a serious medical need. (Doc. # 12 at 6.) In Count I of his Complaint, Dennis challenges the allegedly retaliatory use of excessive force employed by Defendants Stubbs and Deeds while performing an unnecessary cell search and Defendant Minnix's failure to intervene to stop the use of the force. (Doc. # 1-3, Ex. A at 5-12.) In Count II, he alleges Minnix overrode an examining nurse's recommendation that he see a doctor for stitches, and instead instructed NDOC officers to take Dennis back to his cell, even though Dennis's wound would not stop bleeding. (*Id*. at 14-15; Doc. # 12 at 6.)

Defendants now move for summary judgment and argue the use of force employed by Stubbs and Deeds was reasonable and necessary under the circumstances and that Dennis's injury did not amount to a serious medical need. (Doc. # 69 at 6-9.)

## **II. STANDARD OF REVIEW**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric*., 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id*. (quoting FED. R. CIV. P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See Liberty Lobby*, *supra*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c).

2

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Liberty Lobby*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In determining summary judgment, a court applies a burden shifting analysis. When the nonmoving party bears the burden of proving the claim or defense at trial, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal quotations and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III. DISCUSSION

**A. Summary of Dennis's Allegations**

*1. Count I: Excessive Force*

On January 15, 2010, Dennis alleges he requested toilet paper from Officer Bolden, an ESP correctional officer, who disregarded his request. (Doc. # 1-3, Ex. A at 5.) Shortly thereafter, Officer Bolden accused Dennis of calling her a name. (*Id*.) Minutes later, Defendant Stubbs asked through the intercom in Dennis's cell, "Why are you disrespecting my female officers?" (*Id*.) Dennis responded that he had not disrespected anyone, but Stubbs retorted, "she ain't gotta lie," and further stated that he would "show [Dennis] not to disrespect his female staff." (*Id*.)

Stubbs later arrived at Dennis's cell with another officer and told Dennis and his cell mate to "cuff up" for a cell search. (*Id*. at 6.) Dennis was suspicious of this cell search because his cell "had been searched days earlier." (*Id*.) Because of Stubbs's previous threat, Dennis was also reluctant about being handcuffed until a camera was present, as required by prison regulations. (*Id*.)

Stubbs returned to Dennis's cell with Defendants Deeds and Minnix. (*Id*.) Minnix instructed Dennis and his cell mate to walk up to the cell door to be handcuffed. (*Id*.) Dennis was still afraid for his safety, so he asked about the camera. (*Id*.) According to Dennis, Minnix, using two fingers, pointed to his own two eyes and said, "right here." (*Id*.) As Dennis and his cell mate approached the cell door to be handcuffed, Minnix asked Stubbs, "Which one was it?" to which Stubbs responded by referring to Dennis. (*Id*. at 7.) Minnix then signaled for the cell door to open, and once it opened, Dennis's cell mate was escorted to the shower. (*Id*. at 8.)

After this, Stubbs and Deeds "rushed in" his cell "without provocation." (*Id*.) Stubbs grabbed him by the back of the neck and "slammed [Dennis] face first into the wall, busting the upper portion

of [his] left eye on contact." (*Id*.) According to Dennis, Stubbs repeated this act "3 or 4 more times." (*Id*.) During this episode, Stubbs exclaimed, "Your bitch ass will not disrespect my staff!" (*Id*.) Then, Stubbs and Deeds "slammed [Dennis] to the floor . . . with the force that would only be needed to subdue a wild animal." (*Id*.) Once on the floor, Deeds straddled his back and pinned his face to the floor, at which time Stubbs repeatedly struck his face. (*Id*. at 9.) According to Dennis, Minnix had "a clear view" of Stubbs and Deeds's use of force but, although he was standing less than six feet away, Minnix did nothing to stop the attack. (*Id*.)

### *2. Count II: Deliberate Indifference*

On January 15, 2010, after the alleged violent incident described above, ESP nursing staff examined and treated Dennis. (*Id*. at 13.) The nurse told Minnix that Dennis would need to be seen by a physician because he needed stitches. (*Id*.) Despite the nurse's recommendation, Minnix instructed ESP officers to return Dennis to his cell. (*Id*.) Once back in his cell, Dennis's wound continued to bleed and he eventually passed out. (*Id*. at 14.) His cell mate notified prison officials by intercom, who arrived five to ten minutes later and took him to medical where it took an hour before he received any care. (*Id*.) According to Dennis, Minnix knew of yet disregarded his serious injuries and need to see a doctor because Minnix purposely delayed, denied, and interfered with Dennis's medical treatment. (*Id*. at 15.)

**B. Excessive Force**

### *1. The Parties' Positions*

Defendants set forth an entirely different set of facts than Dennis concerning this claim. (*See* Doc. # 69 at 2-4.) In support of their factual assertions, Defendants provide the declarations of Stubbs and Deeds. (Doc. # 77, Ex. C (Stubbs's Decl.); Doc. # 69, Ex. D (Deeds's Decl.) Defendants assert the cell search was random, not triggered by any previous altercation Dennis had with a prison official. (Doc. # 69 at 2.) Defendants further assert Dennis yelled profanities at Stubbs when Stubbs first arrived at his cell. (*Id*.) Once Deeds and Minnix were called for assistance, Dennis refused to cooperate with Minnix's instruction to walk backwards out of the cell to be escorted to the shower. (*Id*.) Instead, according to Defendants, Dennis backed away from the cell door. (*Id*. at 3.) As a consequence, Stubbs

5

and Deeds placed their hands on one of Dennis's arms and forced him to the wall of his cell. (*Id*.) When Dennis began to push back and swing his head around, Minnix ordered Stubbs and Deeds to place Dennis on the ground, which they did. (*Id*.)

Defendants contend Stubbs and Deeds "were obligated to enter into [Dennis]'s cell to physically escort him from his cell to the shower . . ." because Dennis "did not exit his cell when he was requested to do so." (*Id*. at 6.) When Dennis allegedly backed away from his cell door and ultimately resisted, Defendants argue they "[had] to force [Dennis] onto the ground in order to gain control." (*Id*.) Defendants assert the "spontaneous" use of force "was necessary under the conditions and the threat to staff that [Dennis] presented by his refusal to exit his cell when instructed to do so," particularly because Dennis "had a history of resisting staff members and assaultive behavior. (*Id*. at 7) (Citation omitted.) Defendants also contend Dennis did not sustain any serious injury as a result of the incident. (*Id*. at 6.)

In his Opposition brief and his declaration, Dennis largely repeats the allegations contained in his Complaint. (*See* Doc. # 80; Doc. # 80, Ex. 1 (Pl.'s Decl.).) He also adds additional factual details absent from his Complaint, which the court will not consider. *See*, *e.g.*, *Lee v. NNAMHS*, 3:06-cv-433-LRH-RAM, 2009 WL 3052443, at 3 n.5 (D. Nev. Sept. 21, 2009) ("It is not appropriate for Plaintiff to assert new allegations outside the scope of the complaint in an opposition to a motion for summary judgment.")

### *2. Legal Standard*

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citation and footnote omitted). For such claims brought by convicted prisoners, that right is the Eighth Amendment's ban on cruel and unusual punishments. *Id*. (citing *Whitley v. Albers*, 475 U.S. 312, 318-26 (1986)).

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks and citation omitted). Corrections officers, however, often face disturbances and disruptions that

1 may require quick and decisive action, including the use of force, in order "to maintain and restore
2 discipline." *Whitley*, 475 U.S. at 321. With this in mind, courts should grant prison officials "wide-
3 ranging deference in the adoption and execution of policies and practices that in their judgment are
4 needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 321-22
5 (internal quotation marks and citation omitted).

6 Nevertheless, the Constitution requires officers to "balance the need 'to maintain and restore
7 discipline' through force against the risk of injury to inmates." *Hudson*, 503 U.S. at 6. Accordingly, in
8 determining whether prison officials' use of force violated the Cruel and Unusual Punishments Clause,
9 courts must decide "whether force was applied in a good-faith effort to maintain or restore discipline,
10 or maliciously and sadistically to cause harm." *Id*. at 7.

11 Courts should consider several factors in determining whether the use of force was excessive:
12 (1) the extent of the injury; (2) the need for application of force; (3) the relationship between that need
13 and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and
14 (5) any efforts made to temper the severity of a forceful response. *Id*.; *see also Whitley*, 475 U.S. at 321.
15 Further, "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not
16 end it." *Hudson*, 503 U.S. at 7; *cf. Wilkins v. Gaddy*, --- U.S. ---, ---, 130 S.Ct. 1175, 1178-79 (2010)
17 ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An
18 inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim
19 merely because he has the good fortune to escape without serious injury.").

20 ***3. Analysis***

21 First, the extent of Dennis's injury appears to have been slight. The "Unusual Occurrence
22 Report" filed on January 15, 2010, shortly after the incident, indicates Dennis suffered a laceration to
23 his left eye "just below eyebrow approx. ½ [inches] in length." (Doc. # 71-1, Ex E at 2.) The examining
24 medical officer (an ESP nurse) also noted "bleeding & swelling" and recommended that Dennis be
25 taken to the trauma room for further evaluation by a physician to determine the need for sutures. (*Id.*)
26 When Dennis saw a physician later that day, the physician noted the laceration was approximately three
27 centimeters (3 cm) in length and that Dennis made no neurological complaints or complaints about
28

7

1  dizziness. (Doc. # 71-1, Ex. F at 4.) The physician injected the injured area with Lidocaine (a local
2  anesthetic) and placed four interrupted sutures[1] in the wound to be removed in ten days. (*Id*.)

3  For this factor's purposes, the court finds Dennis's injury is either *de minimus* or minor, but not
4  serious. The court also notes that the objective medical evidence does not appear to comport with
5  Dennis's version of events, which included allegations of brutal violence repeated over and over again.

6  Under the second *Hudson* factor, the court finds Stubbs and Deeds needed to use force in order
7  to follow Minnix's order that Dennis be removed from his cell. The declarations of Stubbs and Deeds
8  demonstrate Dennis refused Minnix's instruction to exit his cell. (Doc. # 77, Ex. C at 5-6; Doc. # 69-1,
9  Ex. D at 13-14.)[2] Here, Dennis's allegations appear to converge somewhat with Defendants' version
10 of events. As mentioned previously, Dennis alleges he was reluctant about being handcuffed by Stubbs
11 until a camera was present, and when Minnix and Deeds arrived later, he was still afraid for his safety.
12 It seems Dennis concedes that he refused to exit his cell as instructed, but he attempts to justify his
13 refusal by alleging fear for his safety.

14 Aside from the absence of persuasive evidence that Dennis was justified in being afraid,
15 however, whether Dennis was afraid is inapposite under this factor. Through the declarations of Stubbs
16 and Deeds, Defendants provide competent evidence that Dennis refused an instruction to exit his cell
17 pursuant to prison policy (*i.e.*, a cell search).[3] (Doc. # 77, Ex. C at 5-6; Doc. # 69-1, Ex. D at 13-14.)
18 And, as the court just mentioned, Dennis's own allegations seem to comport with this factual statement.
19 In addition, Defendants also provide Dennis's "Disciplinary History Report," which shows Dennis,
20 before the incident in question, was found guilty of over thirty (30) offenses involving violence,
21 disobedience, or interference with ESP staff since 2005. (*See* Doc. # 69-1, Ex. I at 23-27.) Dennis has

---

[1] A "suture" is "a strand or fiber used to sew parts of the living body." *See* MedlinePlus, Medical Dictionary, http://www.merriam-webster.com/medlineplus/suture (last visited Dec. 12, 2012).

[2] Dennis objects to Stubbs's unsigned declaration filed alongside Defendants' Motion for Summary Judgment. (*See* Doc. # 76.) Defendants later filed a signed copy of Stubbs's Declaration (Doc. # 77, Ex. C), and it is this declaration to which this court refers. Dennis's objection, therefore, should be denied as moot. Dennis's additional objections to Defendants' filing of Exhibits E and F under seal will be addressed in a separate order.

[3] Deeds states the cell search conducted in this case "is a common practice which is done within the ordinary course of business at ESP and within the NDOC." (Doc. # 69-1, Ex. D at 14 ¶ 21.)

plainly failed to rebut any of this evidence. Because courts grant prison officials "wide-ranging deference" in such circumstances, *Whitley*, 475 U.S. at 321-22, this court will not question whether Defendants needed to use force in this case in light of Dennis's behavioral history and his apparent refusal to comply with prison policy.

With regard to the remaining factors, the parties are in clear disagreement. As mentioned above, Dennis alleges, with detail, that the amount of force used was unprovoked, brutal and excessive. Conversely, Defendants assert the amount of force was nothing more than Stubbs and Deeds placing their hands on Dennis, securing him against the wall, and eventually placing him on the ground. The parties provide competing declarations setting forth these differing accounts. (Doc. # 77, Ex. C; Doc. # 69-1, Ex. D; Doc. # 80, Ex. 1.)

In resolving a motion for summary judgment the court cannot weigh the evidence and determine issues of credibility. *See Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). Rather, the court must view the evidence in the light most favorable to the non-moving plaintiff and resolve all material factual disputes in his or her favor. *See In re Slatkin*, 525 F.3d at 810 (citation omitted). In light of the differing versions of events based on competing declarations, the court finds a genuine issue of material fact remains as to whether Defendants' use of force was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[4] *Hudson*, 503 U.S. at 7. Dennis alleges facts which, if found to be true, show that Defendants applied force maliciously and sadistically for the very purpose of causing harm, and Defendants allege facts which, if found to be true, show that Stubbs and Deeds applied force in a good-faith effort to maintain or restore discipline.

Because the court cannot decide issues of credibility at summary judgment, the court recommends Defendants' Motion for Summary Judgment (Doc. # 69) should be denied as it pertains to Count I (excessive force) in Dennis's Complaint, notwithstanding the court's analysis of the previous two *Hudson* factors.

---

[4] Of course, Dennis does not allege that Minnix used physical force against him. Nevertheless, Dennis's allegations that Minnix ordered Stubbs and Deeds to use physical force but failed to intervene when the force became unconstitutionally excessive are sufficient to state a claim against Minnix. *See*, *e.g.*, *Taylor v. List*, 880 F.2d 1040, 1045 ("A supervisor is . . . liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.")

9

**C. Deliberate Indifference to a Serious Medical Need**

*1. The Parties' Positions*

Defendants contend Dennis's injury "does not arise to a serious medical need" because the laceration was "minor," the injury was properly attended to, and Dennis cancelled his request for pain medication. (Doc. # 69 at 9.) Conversely, Dennis argues "Defendant Minnix delayed and impeded [Dennis]'s right to immediate medical attention for non-medical reasons demonstrating deliberate indifference." (Doc. # 80 at 5.) Dennis, however, does not allege that he suffered further injury, or that his injury was exacerbated, by the alleged delayed resulting from Minnix's conduct.

*2. Legal Standard*

A prisoner can establish an Eighth Amendment violation arising from deficient medical care by showing prison officials' "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In the Ninth Circuit, a finding of deliberate indifference to a serious medical need involves the analysis of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997) (en banc).

First, a "serious" medical need exists if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id*. at 1059 (quoting *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . ." *Id*. at 1059-60 (citations omitted); *accord Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners suffer *de minimis* injuries. *Hollis v. Villanueus*, No. C 07-4538 TEH (PR), 2009 WL 290226, at *2 (N.D. Cal. Feb. 2, 2009) (Henderson, J.) (collecting cases).

Second, a defendant's responses to an inmate's serious medical need are deliberately indifferent if an inmate shows "'a purposeful act or failure to respond to a prisoner's pain or possible medical need

1  and . . . harm caused by the indifference.'" *Akhtar v. Mesa*, --- F.3d ---, ---, 2012 WL 5383038, at *9
2  (9th Cir. Nov. 5, 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "Prison officials
3  are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally
4  interfere with medical treatment . . . ." *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989)
5  (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged,
6  however, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at1060;
7  *accord Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)
8  (delay in treatment must lead to further injury to support a claim of deliberate indifference).

9        In sum, deliberate indifference to a serious medical need is present only when a prison official
10 "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware
11 of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he
12 must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *accord Clement v.*
13 *Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

14       *3. Analysis*

15       Dennis's medical records provided by Defendants clearly show the ESP nurse who examined
16 Dennis on January 15, 2010, commented on Dennis's injury. (*See* Doc. # 71-1, Ex. E at 2.) As
17 mentioned previously, this nurse specifically noted the laceration was approximately one-half inches
18 in length and that Dennis was suffering bleeding and swelling in the area. (*Id*.) The nurse's "Plan"
19 included sending Dennis to the trauma room for further evaluation by a physician to determine the need
20 for sutures. (*Id*.) When Dennis ultimately saw a physician later that day, the physician noted (or
21 commented) in Dennis's "Progress Notes": "laceration over [left] eye.  No neurological complaints,
22 [no] dizziness . . . Laceration is [approximately] 3 cm long. . . . Area injected [with] Lidocaine . . . 4
23 interrupted sutures . . . Remove in 10 days." (Doc. # 71-1, Ex. F at 4.)

24       Arguably, Dennis's eye injury was "serious" because the nurse and the physician found it worthy
25 of comment, and the physician also found the injury worthy of treatment. *McGuckin*, 974 F.2d
26 at 1059-60. Every physician or medical professional, however, is likely to make some kind of
27 "comment" in the records when he or she sees or examines a patient, regardless of the extent of the
28

11

1  injury. Yet, no reasonable judge or jury would consider such an injury "serious" simply because the
2  doctor made note of it in the patient's medical records, or treated the patient's injury.

3  Likewise, here, it appears Dennis's attending physician made a note of Dennis's injury simply
4  as a matter of documenting the condition for which Dennis was being treated. The physician made no
5  other comment about Dennis's injury other than noting the three-centimeter (3 cm) length of the
6  laceration. The physician further observed that Dennis suffered from no neurological ailments or
7  dizziness. Importantly, Dennis has not alleged that he has suffered any subsequent complications or
8  continuing pain as result of the injury. In fact, two days after he saw the physician, Dennis cancelled
9  a pain medication request from the previous day. (*See* Doc. # 69-1, Exs. G, H at 19, 21.)

10  Based upon this evidence, the court finds Dennis has not sustained a sufficiently "serious" injury
11  for Eighth Amendment purposes. Consequently, the court finds Defendants have met their burden on
12  summary judgment of proving Dennis's injury was not sufficiently "serious." *See Celotex*, 477 U.S.
13  at 323-25. After the burden shifts to Dennis, *see Matsushita*, 475 U.S. at 586, the court finds he has
14  failed to set forth specific facts showing his injury was sufficiently serious to give rise to a viable Eighth
15  Amendment claim.

16  Regardless, even assuming *arguendo* Dennis's injury was "serious," the court finds Dennis has
17  failed to establish Minnix acted with deliberate indifference.[5] The record shows Dennis initially saw
18  an ESP nurse at 1:00 p.m. (Doc. # 71-1, Ex. E at 2.) After this examination and despite the nurse's
19  alleged orders for Dennis to see a physician, Dennis alleges Minnix sent him back to his cell where his
20  laceration continued to bleed and he eventually "passed out." But, the record also shows Dennis was

---

[5] Defendants' arguments in favor of summary judgment on this Count focus exclusively on the "serious" injury prong of the Eighth Amendment analysis. (*See* Doc. # 69 at 9.) That is, Defendants fail to raise *any* arguments regarding the "deliberate indifference" prong. Regardless, the court may raise this issue *sua sponte*. *Celotex*, 477 U.S. at 326 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."). Upon Defendants' filing of the instant Motion for Summary Judgment, the court entered–as is customary–a Minute Order in Chambers Regarding the Requirements of *Klingele v. Eikenberry* and *Rand v. Rowland* ("the *Klingele* Order"). (Doc. # 72.) The *Klingele* Order advised Dennis that a motion for summary judgment is a dispositive motion that has the potential to end his lawsuit without trial. (*Id*.) The *Klingele* Order further advised Dennis to properly oppose the motion by filing opposing points and authorities, admissible evidence, and a statement of facts under Local Rule 56-1. (*Id*.) The order also advised Dennis to "read [FRCP 56] and be familiar with it." (*Id*.) The court finds the *Klingele* Order put Dennis on notice he had to come forward with all of his evidence. *Celotex*, 477 U.S. at 326. Thus, the court may recommend *sua sponte* entry of summary judgment on Dennis's deliberate indifference claim if the record supports such a conclusion.

seen by a physician at 4:09 p.m. *that same day*, where he received four interrupted sutures for his laceration. (Doc. # 71-1, Ex. F at 4.)

Even if Minnix's conduct caused a "delay," the record shows Dennis suffered no further injury from this delay. *See Shapley*, 766 F.2d at 407; *Hallett v. Morgan*, 296 F.3d 732, 745-46 (9th Cir. 2002) (no Eighth Amendment violation when prisoner could not demonstrate that delays in seeing dental hygienist or dentist caused significant harm). Other than possibly bleeding more than he otherwise might have had he seen a doctor immediately after seeing the nurse, Dennis received the *same* care he would have received if Minnix did not interfere: he received four sutures *within three hours* of being sent back to his cell by Minnix. Thus, even if the injury were considered "serious," because the record is devoid of any evidence that Dennis suffered further injury from Minnix's conduct in allegedly delaying treatment, the court finds Dennis has failed to show Minnix acted with deliberate indifference.

Accordingly, the court recommends Defendants' Motion for Summary Judgment (Doc. # 69) should be granted as it pertains to Count II (deliberate indifference to a serious medical need) in Dennis's Complaint.

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** the District Judge enter an Order **GRANTING in part and DENYING in part** Defendants' Motion for Summary Judgment (Doc. # 69). Specifically, the recommends the District Judge enter an Order:

1. **GRANTING** Defendants' Motion for Summary Judgment as it pertains to the allegations of deliberate indifference to a serious medical need contained in Count II of Dennis's Complaint; and

2. **DENYING** Defendants' Motion for Summary Judgment as it pertains to the allegations of excessive force contained in Count I of Dennis's Complaint.

The parties should be aware of the following:

1. They may file, pursuant to 28 U.S.C. section 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and

Recommendation" and should be accompanied by points and authorities for consideration by the District Judge; and

    2.    This Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Judge's judgment.

DATED: December 13, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE