## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DAMIEN DENNIS,<br><br>        Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA et al.,<br><br>        Defendants. | 3:10-cv-00591-RCJ-WGC<br><br>**ORDER** |

This is a prisoner civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is the Magistrate Judge's Report and Recommendation ("R&R") on Defendants Terrance Deeds's and Tom Stubbs's Motion for Summary Judgment (ECF No. 69). For the reasons given herein, the Court adopts the R&R in part and rejects it in part and grants the motion in full.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff Damien Dennis, a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), brings this action pursuant to § 1983. (*See* Compl., Sept. 2, 2010, ECF No. 1-3). The events giving rise to this litigation occurred while Dennis was housed at Ely State Prison ("ESP") in Ely, Nevada, where he presently resides. (*Id*.). Defendants are Correctional Officers Tom Stubbs and Terrance Deeds, as well as Correctional Lieutenant James Minnix. (*Id*. 3).

Upon screening, the Court determined Dennis stated a colorable Eighth Amendment claim against Stubbs and Deeds for excessive force. In Count I, Dennis complains of the allegedly retaliatory use of excessive force employed by Stubbs and Deeds while performing an allegedly unnecessary cell search and that Minnix did not intervene. In Count II, he alleges Minnix overrode an examining nurse's recommendation that he see a doctor for stitches, and instead instructed

1  NDOC officers to take Dennis back to his cell, even though Dennis's wound would not stop
2  bleeding.  Defendants now move for summary judgment and argue the use of force employed by
3  Stubbs and Deeds was reasonable and necessary under the circumstances and that Dennis's injury
4  did not amount to a serious medical need.

**II.     LEGAL STANDARDS**

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

1 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need
2 not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed
3 factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
4 truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir.
5 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on
6 conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.
7 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and
8 set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*
9 Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

10       At the summary judgment stage, a court's function is not to weigh the evidence and
11 determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477
12 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to
13 be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or
14 is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

15 **III.   ANALYSIS**

16       **A.   Summary of Dennis's Allegations**

17       **1.   Count I: Excessive Force**

18       On January 15, 2010, Dennis alleges he requested toilet paper from Officer Bolden, an ESP
19 correctional officer, who disregarded his request. (Compl. 5).  Shortly thereafter, Officer Bolden
20 accused Dennis of calling her a name. (*Id*.).  Minutes later, Defendant Stubbs asked through the
21 intercom in Dennis's cell, "Why are you disrespecting my female officers?" (*Id*.).  Dennis
22 responded that he had not disrespected anyone, but Stubbs retorted, "she ain't gotta lie," and further
23 stated that he would "show [Dennis] not to disrespect his female staff." (*Id*.).

24       Stubbs later arrived at Dennis's cell with another officer and told Dennis and his cell mate to
25 "cuff  up" for a cell search. (*Id*. 6).  Because of Stubbs's previous threat, Dennis was reluctant to be
26 handcuffed until a camera was present. (*Id*.).  Stubbs returned to Dennis's cell with Deeds and
27 Minnix. (*Id*.).  Minnix instructed Dennis and his cell mate to walk up to the cell door to be

28

1  handcuffed. (*Id*.). Dennis was still afraid for his safety, so he asked about the camera. (*Id*.).
2  According to Dennis, Minnix, using two fingers, pointed to his own two eyes and said, "right here."
3  (*Id*.). As Dennis and his cell mate approached the cell door to be handcuffed, Minnix asked Stubbs,
4  "Which one was it?" to which Stubbs responded by referring to Dennis. (*Id*. 7). Minnix then
5  signaled for the cell door to open, and once it opened, Dennis's cell mate was escorted to the
6  shower. (*Id*. 8).

7  After this, Stubbs and Deeds "rushed in" his cell "without provocation." (*Id*.). Stubbs
8  grabbed him by the back of the neck and "slammed [Dennis] face first into the wall, busting the
9  upper portion of [his] left eye on contact." (*Id*.). According to Dennis, Stubbs repeated this act "3 or
10 4 more times." (*Id*.). During this episode, Stubbs exclaimed, "Your bitch ass will not disrespect my
11 staff!" (*Id*.). Then, Stubbs and Deeds "slammed [Dennis] to the floor . . . with the force that would
12 only be needed to subdue a wild animal." (*Id*.). Once on the floor, Deeds straddled his back and
13 pinned his face to the floor, at which time Stubbs repeatedly struck his face. (*Id*. 9). According to
14 Dennis, Minnix had "a clear view" of Stubbs and Deeds's use of force but, although he was
15 standing less than six feet away, Minnix did nothing to stop the attack. (*Id*.).

### 2. Count II: Deliberate Indifference

On January 15, 2010, after the alleged violent incident described above, ESP nursing staff
examined and treated Dennis. (*Id*. 13). The nurse told Minnix that Dennis would need to be seen by
a physician because he needed stitches. (*Id*.). Despite the nurse's recommendation, Minnix
instructed ESP officers to return Dennis to his cell. (*Id*.). Once back in his cell, Dennis's wound
continued to bleed and he eventually passed out. (*Id*. 14). His cell mate notified prison officials by
intercom, who arrived five to ten minutes later and took him to medical, where it took an hour
before he received any care. (*Id*.). According to Dennis, Minnix knew of yet disregarded his serious
injuries and need to see a doctor because Minnix purposely delayed, denied, and interfered with
Dennis's medical treatment. (*Id*. 15).

///

///

4

**B.     Excessive Force**

**1.     The Parties' Positions**

Defendants challenge the allegations. (*See* Mot. 2-4, ECF No. 69). Defendants provide their declarations. (*See* Stubbs's Decl., ECF No. 77, Ex. C; Deeds's Decl., ECF No. 69, Ex. D). Defendants assert the cell search was random, and not triggered by any previous altercation Dennis had with a prison official.(Deeds's Decl. 2). Defendants further assert Dennis yelled profanities at Stubbs when Stubbs first arrived at his cell. (*Id*.). Once Deeds and Minnix were called for assistance, Dennis refused to cooperate with Minnix's instruction to walk backwards out of the cell to be escorted to the shower. (*Id*.). Instead, Dennis backed away from the cell door. (*Id*. 3). As a consequence, Stubbs and Deeds placed their hands on one of Dennis's arms and forced him to the wall of his cell. (*Id*.). When Dennis began to push back and swing his head around, Minnix ordered Stubbs and Deeds to place Dennis on the ground, which they did. (*Id*.).

Defendants contend Stubbs and Deeds "were obligated to enter into [Dennis]'s cell to physically escort him from his cell to the shower . . ." because Dennis "did not exit his cell when he was requested to do so." (*Id*. 6). When Dennis allegedly backed away from his cell door and ultimately resisted, Defendants "[had] to force [Dennis] onto the ground in order to gain control." (*Id*.). Defendants assert the "spontaneous" use of force "was necessary under the conditions and the threat to staff that [Dennis] presented by his refusal to exit his cell when instructed to do so," particularly because Dennis "had a history of resisting staff members and assaultive behavior. (*Id*. at 7) (citation omitted)). Defendants also contend Dennis did not sustain any serious injury as a result of the incident. (*Id*. 6).

In opposition, Dennis largely repeats the allegations contained in his Complaint. (*See* Dennis Decl.. ECF No. 80, Ex. 1). He also adds additional factual details absent from his Complaint, which the court will not consider. *See*, *e.g.*, *Lee v. NNAMHS*, No. 3:06-cv-433-LRH-RAM, 2009 WL 3052443, at 3 n.5 (D. Nev. Sept. 21, 2009) ("It is not appropriate for Plaintiff to assert new

5

allegations outside the scope of the complaint in an opposition to a motion for summary judgment.")

### 2. Legal Standards

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citation and footnote omitted). For such claims brought by convicted prisoners, that right is the Eighth Amendment's ban on cruel and unusual punishments. *Id*. (citing *Whitley v. Albers*, 475 U.S. 312, 318-26 (1986)).

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (internal quotation marks and citation omitted). Corrections officers, however, often face disturbances and disruptions that may require quick and decisive action, including the use of force, in order "to maintain and restore discipline." *Whitley*, 475 U.S. at 321. With this in mind, courts should grant prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 321–22 (internal quotation marks and citation omitted). Nevertheless, the Constitution requires officers to "balance the need 'to maintain and restore discipline' through force against the risk of injury to inmates." *Hudson*, 503 U.S. at 6. Accordingly, in determining whether prison officials' use of force violated the Cruel and Unusual Punishments Clause, courts must decide "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7.

Courts should consider several factors in determining whether the use of force was excessive: (1) the extent of the injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Id*.; *see also Whitley*, 475 U.S. at 321. Further, "[t]he absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Hudson*, 503 U.S. at 7; *accord Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1178–79 (2010) ("Injury and force . . . are only imperfectly correlated, and

6

it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

**3.     Analysis**

First, the extent of Dennis's injury appears to have been slight. The "Unusual Occurrence Report" filed on January 15, 2010, shortly after the incident, indicates Dennis suffered a laceration to his left eye "just below eyebrow approx. ½ [inches] in length." (ECF No. 71-1, Ex. E, at 2). The examining medical officer (an ESP nurse) also noted "bleeding & swelling" and recommended that Dennis be taken to the trauma room for further evaluation by a physician to determine the need for sutures. (*Id*.). When Dennis saw a physician later that day, the physician noted the laceration was approximately three centimeters (3 cm) in length and that Dennis made no neurological complaints or complaints about dizziness. (ECF No. 71-1, Ex. F, at 4). The physician injected the injured area with Lidocaine (a local anesthetic) and placed four interrupted sutures[1] in the wound to be removed in ten days. (*Id*.). The court finds Dennis's injury is either *de minimus* or minor, but not serious. The court also notes that the objective medical evidence does not appear to comport with Dennis's version of events, which included allegations of brutal violence repeated over and over again.

Under the second *Hudson* factor, the court finds that Stubbs and Deeds needed to use force in order to follow Minnix's order that Dennis be removed from his cell. The declarations of Stubbs and Deeds demonstrate Dennis refused Minnix's instruction to exit his cell. (*See* Stubbs Decl. 5–6; Deeds Decl. 13–14.). As mentioned previously, Dennis alleges he was reluctant about being handcuffed by Stubbs until a camera was present, and when Minnix and Deeds arrived later, he was still allegedly afraid for his safety. It appears Dennis concedes that he refused to exit his cell as instructed.

Aside from the absence of persuasive evidence that Dennis was justified in being afraid, however, whether Dennis was afraid is inapposite under this factor. Through the declarations of

---

[1] A "suture" is "a strand or fiber used to sew parts of the living body." *See* MedlinePlus, Medical Dictionary, http://www.merriam-webster.com/medlineplus/suture (last visited Dec. 12, 2012).

7

Stubbs and Deeds, Defendants provide competent evidence that Dennis refused an instruction to exit his cell pursuant to prison policy (*i.e.*, a cell search).[2] (Stubbs Decl. 5–6; Deeds Decl. 13–14). In addition, Defendants provide Dennis's "Disciplinary History Report," which shows Dennis, before the incident in question, had been found guilty of over thirty (30) offenses involving violence, disobedience, or interference with ESP staff since 2005. (*See* ECF No. 69-1, Ex. I, at 23–27). Dennis has plainly failed to rebut any of this evidence. The Court finds there is no genuine issue of material fact that Defendants needed to use force in this case in light of Dennis's behavioral history and his apparent refusal to comply with prison policy.

### C.  Deliberate Indifference to a Serious Medical Need

#### 1.  The Parties' Positions

Defendants contend Dennis's injury "does not arise to a serious medical need" because the laceration was "minor," the injury was properly attended to, and Dennis cancelled his request for pain medication. Conversely, Dennis argues "Defendant Minnix delayed and impeded [Dennis]'s right to immediate medical attention for non-medical reasons demonstrating deliberate indifference." Dennis, however, does not allege that he suffered further injury, or that his injury was exacerbated, by the alleged delay resulting from Minnix's conduct.

#### 2.  Legal Standard

A prisoner can establish an Eighth Amendment violation arising from deficient medical care by showing prison officials' "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In the Ninth Circuit, a finding of deliberate indifference to a serious medical need involves the analysis of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997) (en banc).

---

[2] Deeds states the cell search conducted in this case "is a common practice which is done within the ordinary course of business at ESP and within the NDOC." (Deeds Decl. 14 ¶ 21).

8

First, a "serious" medical need exists if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id*. at 1059 (quoting *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . ." *Id*. at 1059–60 (citations omitted); *accord Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

Second, a defendant's responses to an inmate's serious medical need are deliberately indifferent if an inmate shows "'a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment . . . ." *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, however, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060; *accord Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam) (delay in treatment must lead to further injury to support a claim of deliberate indifference).

In summary, deliberate indifference to a serious medical need is present only when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *accord Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

### 3.   Analysis

The ESP nurse who examined Dennis on January 15, 2010 commented on Dennis's injury, noting the laceration was approximately one-half inches in length and that Dennis was suffering bleeding and swelling in the area. The nurse's "Plan" included sending Dennis to the trauma room

1  for further evaluation by a physician to determine the need for sutures. (*Id.*). When Dennis
2  ultimately saw a physician later that day, the physician noted (or commented) in Dennis's "Progress
3  Notes": "laceration over [left] eye. No neurological complaints, [no] dizziness . . . Laceration is
4  [approximately] 3 cm long. . . . Area injected [with] Lidocaine . . . 4 interrupted sutures . . . Remove
5  in 10 days." (ECF No. 71-1, Ex. F, at 4).

6  Arguably, Dennis's eye injury was "serious" because the nurse and the physician found it
7  worthy of comment, and the physician also found the injury worthy of treatment. *McGuckin*, 974
8  F.2d at 1059–60. Every physician or medical professional, however, is likely to make some kind of
9  "comment" in the records when he or she sees or examines a patient, regardless of the extent of the
10 injury. Yet, no reasonable judge or jury would consider such an injury "serious" simply because the
11 doctor made note of it in the patient's medical records, or treated the patient's injury.

12 Likewise, here, it appears Dennis's attending physician made a note of Dennis's injury
13 simply as a matter of documenting the condition for which Dennis was being treated. The physician
14 made no other comment about Dennis's injury other than noting the three-centimeter length of the
15 laceration. The physician further observed that Dennis suffered from no neurological ailments or
16 dizziness. Importantly, Dennis has not alleged that he has suffered any subsequent complications or
17 continuing pain as result of the injury. In fact, two days after he saw the physician, Dennis
18 cancelled a pain medication request from the previous day.

19 Based upon this evidence, the court finds Dennis has not sustained a sufficiently "serious"
20 injury for Eighth Amendment purposes. Consequently, the court finds Defendants have met their
21 burden on summary judgment of proving Dennis's injury was not sufficiently "serious." *See*
22 *Celotex*, 477 U.S. at 323–25. After the burden shifts to Dennis, *see Matsushita*, 475 U.S. at 586, the
23 court finds he has failed to set forth specific facts showing his injury was sufficiently serious to give
24 rise to a viable Eighth Amendment claim.

25 And even assuming *arguendo* Dennis's injury was "serious," the court finds Dennis has
26 failed to establish that Minnix acted with deliberate indifference. The record shows Dennis initially
27 saw an ESP nurse at 1:00 p.m. After this examination and despite the nurse's alleged orders for
28

Dennis to see a physician, Dennis alleges Minnix sent him back to his cell where his laceration continued to bleed and he eventually "passed out." But, the record also shows Dennis was seen by a physician at 4:09 p.m. that same day, where he received four interrupted sutures for his laceration.

Even if Minnix's conduct caused a "delay," the record shows Dennis suffered no further injury from this delay. *See Shapley*, 766 F.2d at 407; *Hallett v. Morgan*, 296 F.3d 732, 745–46 (9th Cir. 2002) (no Eighth Amendment violation when prisoner could not demonstrate that delays in seeing dental hygienist or dentist caused significant harm). Other than possibly bleeding more than he otherwise might have had he seen a doctor immediately after seeing the nurse, Dennis received the same care he would have received if Minnix did not interfere: he received four sutures within three hours of being sent back to his cell by Minnix. Thus, even if the injury were considered "serious," because the record is devoid of any evidence that Dennis suffered further injury from Minnix's conduct in allegedly delaying treatment, the court finds Dennis has failed to show Minnix acted with deliberate indifference.

## CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 87) is ADOPTED IN PART and REJECTED IN PART.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 69) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 29th day of March, 2013.

_____
ROBERT C. JONES
United States District Judge